**Lori HICKMAN, Plaintiff–Appellee,**

v.

**Paul LASKODI, Defendant–Appellant.**

No. 01–4045.

United States Court of Appeals,
Sixth Circuit.

Aug. 30, 2002.

Before KEITH, MOORE, and
GILMAN, Circuit Judges.

OPINION

GILMAN, Circuit Judge.

Lori Hickman, an employee at the Lorain Correctional Institution (LCI), brought suit in federal district court pursuant to 42 U.S.C. § 1983, alleging that Paul Laskodi, her former supervisor, violated her due process and equal protection rights by subjecting her to sexual harassment. Laskodi moved for judgment on the pleadings with regard to Hickman's claim, asserting the defense of qualified immunity. After the district court denied the motion, Laskodi filed this timely interlocutory appeal. For the reasons set forth

below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

The facts set forth below are based upon the allegations contained in Hickman's complaint, allegations that we must accept as true for the purpose of this appeal. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999) (accepting the plaintiff's factual allegations as true in reviewing the grant of a defendant's motion for judgment on the pleadings).

Hickman began working as a food service coordinator at LCI in 1997. Laskodi was one of her supervisors. In May of 1999, while Laskodi was involved in a contested divorce, Hickman overheard Laskodi make threats against his wife. She specifically heard him "make several comments on the telephone complaining about the local Lorain swat team removing certain guns from his residence" and stating in an angry tone that "I'm going to kill the f...ing b...h and her father." Hickman relayed Laskodi's threats to the warden pursuant to LCI policy.

Laskodi confronted Hickman about the matter on May 14, 1999, soon after he learned that she had reported his threats to the warden. He "threatened [Hickman] with bodily harm" and "made several comments that because [she] was a female she would not be able to defend herself." Hickman became "fearful for her life" and thus reported Laskodi's newest threats to the warden. No action was taken against Laskodi.

Based on her May 14 encounter with Laskodi, Hickman "sought psychiatric and psychological counseling." Her doctor diagnosed her as suffering from "adjustment disorder with mixed emotional features" and recommended that she neither work under Laskodi's supervision nor have any interaction with him. LCI was advised of Hickman's condition, but continued to have her report to Laskodi. This caused Hickman to take medical leave beginning on May 21, 1999. She has yet to return to work.

### B. Procedural background

Hickman filed suit against the Ohio Department of Rehabilitation and Correction (ODRC), LCI, and Laskodi in October of 2000. She asserted federal claims pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e(1)-e(17), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213. In addition, Hickman asserted state-law claims both for discrimination under Ohio Revised Code § 4112 and for intentional infliction of emotional distress.

ODRC, LCI, and Laskodi filed a joint motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The district court granted the defendants' motion on all but one of the asserted claims. Hickman's § 1983 claim against Laskodi in his individual capacity was the only claim not dismissed. In her § 1983 cause of action, Hickman claimed that Laskodi had violated her due process and equal protection rights. The district court determined that Hickman had not pled any facts establishing a due process violation, and therefore dismissed that aspect of her § 1983 claim. But the court reasoned that the complaint, when construed liberally in Hickman's favor, alleged an equal protection violation based upon sexual harassment. Concluding that the alleged harassment violated a clearly established constitutional right of which a reasonable person would have known, the court denied Laskodi's assertion of quali-

fied immunity. This timely interlocutory appeal by Laskodi followed.

## II. ANALYSIS

Hickman's remaining claim is based upon 42 U.S.C. § 1983, a statute that allows recovery for constitutional violations caused by an official acting under the color of state law. Laskodi contends that the doctrine of qualified immunity shields him from liability on Hickman's claim. We review the district court's denial of qualified immunity de novo. *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir.1999).

Under the doctrine of qualified immunity, government officials performing discretionary functions will not incur liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The purpose of the doctrine "is to allow public officials to perform important government functions free from the debilitating effects of excessive litigation." *Bartell v. Lohiser*, 215 F.3d 550, 556 (6th Cir.2000).

When qualified immunity is asserted in a motion for judgment on the pleadings, the district court must conduct a two-step inquiry. The court must first decide whether the complaint alleges the violation of a constitutionally protected right. If so, the court "must then consider whether the violation involved clearly established constitutional rights of which a reasonable person would have known." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (internal quotation marks omitted) (setting forth the two-step framework for analyzing an assertion of qualified immunity). At both steps, the court must view the complaint in the light most favorable to the plaintiff without imposing any heightened pleading requirements. *Goad v.*

*Mitchell*, 297 F.3d 497, ——, (6th Cir.2002) (holding that an assertion of qualified immunity does not require the plaintiff to plead her claim with any more specificity than that required by Rule 8(a) of the Federal Rules of Civil Procedure, which requires that the complaint set forth "a short and plain statement of the claim").

In the present case, Hickman maintains that her complaint sufficiently alleges a violation of her Fourteenth Amendment right to equal protection of the law. (Her brief often uses the phrases "equal protection" and "due process" interchangeably. The district court, however, dismissed the due process aspect of her § 1983 claim, and she has not appealed that decision.) In particular, Hickman contends that she alleged facts establishing that Laskodi subjected her to a sexually hostile work environment.

Sexual harassment by a government official violates the Equal Protection Clause. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir.1988). To state a claim of sexual harassment based upon a hostile work environment created by a supervisor, a plaintiff suing under § 1983 must allege facts that are sufficient to establish the following four elements:

> (1) she was a member of a protected class; (2) she was subject to unwelcomed sexual harassment; (3) the harassment was based on her sex; and (4) the harassment created a hostile work environment . . . .

*Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 & n. 2 (6th Cir.1999); *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988) ("[T]he showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983.").

■ Laskodi contends that Hickman's complaint does not allege that his conduct was motivated by her gender. Sexual harassment is based on gender where, "but for the fact of her sex, [the plaintiff] would not have been the object of harassment." *Williams,* 187 F.3d at 565 (internal quotation marks omitted). In her complaint, Hickman alleges that Laskodi threatened her and told her that "because [she] was a female she would not be able to defend herself." Laskodi's alleged statement indicates that Hickman's gender played a role in his decision to threaten her with bodily harm. In particular, if Hickman had been a male, and therefore in Laskodi's view more likely to resist his physical aggression, Laskodi might not have chosen to threaten Hickman. Thus, when viewed in the light most favorable to Hickman, the complaint alleges sufficient facts to establish that Laskodi harassed Hickman based on her gender.

But Laskodi points out that, in her deposition testimony, Hickman acknowledged that Laskodi did not direct these remarks at her. Instead, Hickman described Laskodi's comments as follows:

> He did not say that directed at me. That was the day he was in the kitchen and I was working in the kitchen. He was supervising and [we were] standing by the hot box when he started going off about his wife. He stated that she better remember who the man was and who the woman was, that she didn't stand a chance against him. She was a woman.

In ruling on a motion for judgment on the pleadings, however, the district court may not consider material outside of the pleadings unless the court converts the motion into one for summary judgment. Fed. R.Civ.P. 12(c). No such conversion was made, nor was one requested by Laskodi. Hickman's deposition testimony was in fact never presented to the district court, apparently because the deposition was not taken until two days before the district court issued its order denying Laskodi's motion for judgment on the pleadings. This testimony is therefore not properly before us.

■ Laskodi also challenges whether Hickman's complaint describes a hostile work environment. Harassment creates a hostile or abusive work environment when it is "sufficiently severe or pervasive to alter the conditions of the victim's employment ...." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks omitted). "Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment 'include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 463 (6th Cir.2000) (quoting *Harris,* 510 U.S. at 23).

Although not a model of clarity, Hickman's complaint alleges that, on one occasion, Laskodi threatened her with "bodily harm." An isolated incident of harassment, if "extremely serious," is sufficient to create a hostile work environment. *See id.* ("Isolated incidents, ... *unless extremely serious,* will not amount to discriminatory changes in the terms or conditions of employment.") (emphasis added). In this case, Hickman alleged the most severe form of sexual harassment—harassment involving the threat of physical harm. Such a threat is far more serious than a "mere offensive utterance." *Id.* Laskodi's alleged threat made Hickman "fear for her life."

Hickman's encounter with Laskodi, moreover, allegedly caused her to suffer

from "adjustment disorder with mixed emotional features," an ailment that she claims has prevented her from returning to work at LCI. We therefore conclude that, when viewed in the light most favorable to Hickman, the complaint alleges a hostile work environment. *See Moring v. Arkansas Dept. of Corr.*, 243 F.3d 452, 456–57 (8th Cir.2001) (holding that evidence of an isolated harassing incident was sufficient to support the jury's finding of a sexually hostile work environment where the plaintiff's supervisor, clad in only boxer shorts, "touched her thigh and leaned in as if to kiss her").

■ Based on the above analysis, Hickman has sufficiently pled a violation of her constitutional right to equal protection of the law. Our inquiry thus turns to whether this "violation involved clearly established constitutional rights of which a reasonable person would have known." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir.2002) (internal quotation marks omitted). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "Although it need not be the case that 'the very action in question has previously been held unlawful, . . . in the light of pre-existing law the unlawfulness must be apparent.'" *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir.1992) (quoting *Anderson*, 483 U.S. at 640); *Hope v. Pelzer*, —— U.S. ——, ——, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666, —— (2002) (making clear that the facts of previous cases need not be "materially similar" for qualified immunity to apply, so long as the unlawfulness of the official's conduct is apparent) (internal quotation marks omitted). "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir.2002).

In the present case, the district court determined that Hickman's complaint alleged the violation of a clearly established right. The court reasoned as follows:

> Mr. Laskodi is hard pressed to argue that a reasonable person would not understand that threatening physical violence against a co-worker violates at least some statute, rule or law thus negating a claim of qualified immunity.

Instead of pointing out that Laskodi's conduct was generally unlawful, the district court should have focused on the more narrow question of whether Laskodi was on notice that his harassing behavior violated Hickman's constitutional right to equal protection of the law. *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir.2002) (internal quotation marks omitted). Because the denial of qualified immunity is a legal determination subject to de novo review, however, we may resolve the issue notwithstanding the district court's misdirected analysis.

Laskodi allegedly threatened Hickman on May 14, 1999. This court had made clear long before that date that sexual harassment by a government official violates the Equal Protection Clause. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir.1988). The Supreme Court was also previously on record as holding that sexual harassment occurs where an individual is subjected to a hostile work environment based on gender, *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), and that a hostile work environment is particularly likely to arise from behavior that is physically threatening and unreasonably interferes with an individual's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114

**456**

S.Ct. 367, 126 L.Ed.2d 295 (1993). Furthermore, the Supreme Court had recognized that even a single instance of extremely serious harassment might create a hostile work environment. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (recognizing that "simple teasing, offhand comments, and isolated incidents" will not give rise to a hostile work environment unless they are extremely serious) (internal quotation marks omitted).

In light of the legal landscape at the time of the alleged harassment, we believe that any reasonable official in Laskodi's position would have known that the Equal Protection Clause prohibits threatening a female subordinate with bodily harm based on her gender. Hickman's complaint therefore alleged a violation of a clearly established constitutional right. Accordingly, we conclude that the district court properly rejected Laskodi's assertion of qualified immunity at the pleading stage.

Our decision does not preclude Laskodi, after discovery has been completed, from moving for summary judgment on the basis of qualified immunity. Indeed, the district court stated in its decision that "[i]f no further factual support for [Hickman's sexual harassment] claim is presented . . ., the claim will certainly not survive summary judgment." We express no opinion on the outcome of any such motion, but simply point out that Laskodi bears a much heavier burden at the pleading stage to show that he is entitled to judgment as a matter of law.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.