James Lee **FIELDS**, Appellant

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2005–SC–000610–MR.

Supreme Court of Kentucky.

April 19, 2007.

Susan Jackson Balliet, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, James C. Shackelford, Assistant Attorney General, Office of Criminal Appeals, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

On March 26, 2004, a jury found Appellant, James Lee Fields, guilty of: (1) complicity to commit assault in the second degree, and (2) complicity to commit robbery in the first degree. He was sentenced to ten (10) years for the complicity to commit assault and fifteen (15) years for the complicity to commit robbery, both to run consecutively. He now appeals as a matter of right, Ky. Const. § 110(2)(b), alleging the trial court violated his due process rights by: (1) not merging the robbery and assault charges, thus allowing double jeopardy; (2) allowing complicity amendments to be made to his indictment following the close of the evidence; (3) allowing admission of the victim's pre-trial identification of Appellant; (4) denying his tendered intentional fourth degree assault misdemeanor instruction; (5) overruling his objection and mistrial motion concerning prosecutorial misconduct in closing arguments; and finally, (6) denying his motion for a new trial regarding juror dishonesty against his co-defendant during voir dire. After a careful review of the record, we affirm Appellant's convictions.

## I. Facts

On November 16, 2003, Collin Rogers (Rogers) was hitch-hiking from Letcher County, Kentucky, to Virginia to get some beer when Coley Brown (Brown) pulled over to pick him up. Rogers offered Brown three dollars to give him a ride to Virginia and Brown agreed. On the way, Brown drove by and picked up Appellant. Appellant then took over the driving. They then drove to Virginia, where Rogers bought a case and a half of beer.

Later, they drove back to Letcher County, stopping at Brown's ex-wife's house to drop some things off. By then it was dark. Rogers went inside the house, but became suspicious and tried to leave when Appellant and Brown started talking secretively with Brown's ex-wife. Appellant and Brown, however, followed him and ordered him back into the car. When he hesitated, Brown told him he had a rifle and mace in his trunk and he was going to spray him if he didn't get back in the car.

Back in the car, Brown berated Rogers calling him a "Vietnam pussy," and telling him he was going to kill him. Appellant chimed in that he was going to teach him a

lesson. They then drove to a nearby cemetery where they frisked Rogers for weapons, checked his backpack, and looked through his wallet. Soon thereafter, they stopped and let Rogers out of the car.

As Rogers started to leave, Appellant asked for a couple of beers. Rogers returned to the car and gave him several, yet Appellant demanded a different kind. When Rogers ignored him and walked away, Appellant got out and started beating him. During the fray, Rogers taunted Appellant by telling him "his daughter could hit harder than [Appellant] could." Appellant then yelled for Brown to come and help. Brown came over and hit Rogers with a lug wrench. Appellant then told Brown to get Rogers's wallet. As Rogers reached for his wallet; Brown hit him again with the lug wrench. Appellant and Brown told Rogers they were going to bash his head in with the lug wrench and kill him. Believing *they would kill him if they got his wallet,* Rogers threw the wallet into some nearby bushes, whereupon, Appellant and Brown left him to search for the wallet.

Fortunately, at this moment, Larry Kelly (Kelly) drove by. He saw the parked car and slowed down to look. He immediately heard someone yell, "Please sir, help me! They're trying to kill me! They're robbing me! They're trying to kill me! Please sir, help me!" Rogers was on his knees with his hands behind his head. A man standing behind Rogers told Kelly that Rogers was just drunk. However, Kelly did not leave. Appellant and Brown then left. Kelly took Rogers to the local hospital and testified that Rogers had blood all over his head and hands and was shaking and scared.

Letcher County Deputy Sheriff, Shane Amburgy, responded to the call from the hospital. He testified that Rogers described to him what happened. He told him the assailants' names were Brown and a James Lee, last name unknown. Several days later, the deputy showed him photos of Appellant and Brown. He identified them as his attackers. "James Lee" turned out to be Appellant.

## II. There was no merger of the assault charge into the robbery charge and thus, no "double jeopardy."

At the close of Appellant's case, Brown, Appellant's co-defendant, moved for a directed verdict on grounds the assault charge merged into the robbery charge. The trial court denied the motion. Appellant now argues that because there was no merger, he was subjected to "double jeopardy" by being convicted of both counts.

Appellant, however, did not join in Brown's motion regarding merger and argues it now for the first time within the context of "double jeopardy." This issue was therefore not preserved and should only be reviewed under a palpable error standard. *Cf. Price v. Commonwealth,* 474 S.W.2d 348, 350 (Ky.1971) (where a defendant was being tried along with two co-defendants, and counsel for one of the co-defendants objected to the admission of certain evidence, but defendant did not object to the introduction of such evidence, the defendant failed to preserve the issue of admissibility of the evidence for appellate review). Yet, given our deference to "double jeopardy" issues under the doctrine of *Sherley v. Commonwealth,* 558 S.W.2d 615 (Ky.1977), we will review the assignment of error, although we have expressed some doubt concerning the appropriateness of such continued review. *Cf. Baker v. Commonwealth,* 922 S.W.2d 371, 374 (Ky.1996).

In *Commonwealth v. Burge,* 947 S.W.2d 805 (Ky.1996), this Court held that "[d]ouble jeopardy does not occur when a person is charged with two crimes arising from

the same course of conduct, as long as each statute 'requires proof of an additional fact which the other does not." ' *Id.* at 809 (citations omitted). Consistent with this, this Court held in *Taylor v. Commonwealth,* 995 S.W.2d 355 (Ky.1999), that there was no double jeopardy [when] the defendant was convicted of both assault and robbery, where:

> conviction of either the assault or the robbery of [the victim] required proof of an element not required to prove the other. The conviction of robbery required proof of a theft, which was not required to convict of assault. The conviction of assault required proof of a physical injury to [the victim], whereas the conviction of robbery required proof only that the Appellant used or threatened the use of physical force upon [the victim] while armed with a .22 rifle.

*Id.* at 359.

■ KRS 508.020, assault in the second degree, states, as pertinent here, that a person is guilty of assault in the second degree when "[h]e intentionally causes physical injury to another person by means of a ... dangerous instrument." The instruction given by the trial court required the finding of physical injury by [Brown by] means of a "dangerous instrument."

KRS 515.020, robbery in the first degree, states, as pertinent here:

> that a person is guilty of robbery in the first degree when in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he: .... c) uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

The robbery instruction given by the trial court required that "[Brown] attempted to steal the wallet" with "intent to accomplish the theft" by threatening the "immediate use of physical force ... with a 'lug wrench,' a 'dangerous instrument." '

In this case, the actual infliction of physical injury to Rogers by a dangerous instrument was not required to convict Appellant of complicity to robbery in the first degree; nor was the theft required for conviction of complicity to assault second. Both of these statutes thus had different elements that had to be proved in finding guilt under the respective instructions. Each required proof of an element not contained within the other and thus the doctrine of merger was not applicable. There being no merger, the rule of "double jeopardy" was not violated. That being so, there was neither error, nor "palpable error."

### III. Amending the indictment was not error.

Neither the Appellant, nor his co-defendant Brown testified at trial. Brown, however, called two alibi witnesses for his "whereabouts" at the time of Rogers's beating. The Appellant, on the other hand, relied on a "reasonable doubt defense," attacking the accuracy and credibility of the Commonwealth's witnesses.

Following the close of all the evidence, the Commonwealth moved to amend the original counts of assault second and first degree robbery against Appellant to *complicity* to first degree robbery and assault second.[1] Appellant objected on grounds of lack of notice and due process, but requested no continuance, or right to reopen, to provide additional evidence. He now claims the amendment violated his Fourteenth Amendment due process right to notice. On the facts at hand, we disagree

---

1. These were the only instructions given

against Appellant.

RCr 6.16 permits a court to amend an indictment at any time *before verdict*, if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced. If "[n]o additional evidence [is] required to prove the amended offense and [Appellant has] not shown that [he was] prejudiced by the amendment, [then amending the indictment is not] error." *Schambon v. Commonwealth*, 821 S.W.2d 804, 810 (Ky.1991). "[A]mending the indictment to include an allegation that the defendant is guilty of the underlying charge by complicity does not constitute charging an additional or different offense." *Commonwealth v. McKenzie*, 214 S.W.3d 306, 307 (Ky.2007).

"[T]he essential question when examining [any] variance between the indictment and the proof is whether the defendant in fact had fair notice and a fair trial." *Johnson v. Commonwealth*, 864 S.W.2d 266, 272 (Ky.1993)("He was not mislead, surprised or thrown off guard except insofar as he chose to shoot the gap in reliance on a mere technical defect of which he was fully aware"). As was noted in *Johnson*, "[t]he indictment could and should have been amended at the conclusion of the testimony, but it cannot reasonably be held that a failure in that respect affected the defendant's substantial rights." *Id.* at 272.

We have recently reaffirmed this holding on essentially the same facts as here. "When these circumstances are considered in their totality, we find that [Appellant] suffered no unfair surprise and was not misled as a result of the original indictment being amended at the close of the Commonwealth's case in chief to include a charge that the underlying offense was committed by complicity." *McKenzie*, 214 S.W.3d at 309. In *McKenzie*, like here, there was no evidence that the amendment to complicity unfairly impeded, or damaged the Appellant's defense.

The amendment reflected the only set of facts ever alleged by the Commonwealth and did not conflict with, or impair Appellant's "reasonable doubt" defense, so as to unduly affect its validity or credibility. Thus, the amendment of the charges from robbery and assault to complicity to those same counts did not prejudice the substantial rights of the Appellant. The amendment merely snatched from Appellant's hands an error of judgment the Commonwealth was close to making.[2] Where no other loss or impairment is shown, one can claim any substantial right to compel the continuation of such an error in judgment by the Commonwealth. Thus, there was no error.

## IV.  Pretrial identification did not prejudice Appellant.

In chambers the morning of trial, Appellant made a motion to suppress his pretrial

---

2.  In *Rice v. Commonwealth*, 259 S.W.2d 440, 441 (Ky.1953) and other cases, both prior and subsequent, *see, e.g., Mulligan v. Commonwealth*, 84 Ky. 229, 1 S.W. 417 (1886), *Neal v. Commonwealth*, 302 S.W.2d 573 (Ky.1957), *Brown v. Commonwealth*, 498 S.W.2d 119, 120 (Ky.1973), this Court held it *per se* error to instruct on complicity (also known as aiding and abetting) where the indictment charges the defendant alone with commission of the crime. Yet, these cases have been superseded by KRS 502.020 and KRS 502.030, and subsequent rulings. *See Johnson v. Commonwealth*, 864 S.W.2d 266, 272 (Ky.1993)("under modern rules the essential question when examining variance between the indictment and the proof is whether the defendant in fact had fair notice and a fair trial"); *McKenzie*, 214 S.W.3d at 309 (overruling *Brown, supra*, and its predecessors to the extent "that it is *per se* prejudicial to the substantial rights of a defendant to amend an indictment during trial to add a charge that the underlying crime was committed by complicity"). Thus, even if the indictment had never been amended, we would have nonetheless found no error in this case since Appellant in fact had fair notice and a fair trial.

identification. He argued that since only three pictures were shown to Rogers— Appellant, his brother "Popeye," and Brown, the pretrial identification was overly suggestive and unduly prejudicial. The Commonwealth pointed out that the photos were merely to confirm what Rogers had already told them days before. The motion was denied, renewed at trial and again denied.

■ We therefore must determine whether the identification is reliable based upon the totality of the circumstances. *Manson v. Brathwaite,* 432 U.S. 98, 106, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977). "The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witnesses' degree of attention, the accuracy of the witnesses' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

■ In this case, Rogers had more than five hours to view the two assailants. He did not begin drinking until well after the men were together in the car. He was able to give a detailed account of the afternoon, naming the people they talked to and the places they went. He gave the officers Appellant's first and middle name, as well as Brown's last name. He knew Appellant had a brother named "Popeye" and verified through the photos that "Popeye" was not the man who attacked him. He identified the men without hesitation and never had any doubt that they were his attackers. The crime occurred on November 16,

2003, and the identification by Rogers from the photos was on the 21st. "This five day period is so short that it supports the view that [the] identification of [the defendant] was reliable." *United States ex rel. Lee v. Flannigan,* 884 F.2d 945, 950 (7th Cir.1989). Considering the totality of the circumstances, we find no error.

## V. The misdemeanor fourth degree assault instruction was properly overruled.

Appellant was denied an instruction for assault in the fourth degree as a "lesser-included offense" to *complicity to assault* in the second degree. The instruction as offered referred only to Appellant having *intentionally*[3] caused physical injury to Rogers by hitting him with his fists. This alleged conduct *was separate and distinct* from his complicity in Brown using the lug wrench to beat Rogers to get his wallet, the crimes for which he was charged under the indictment as amended.

■ In every criminal case, the Court has a duty to instruct the jury in writing on the law of the case. RCr 9.54(1). "This general rule requires instructions applicable to every state of the case covered by the indictment and deducible from or supported to any extent by the testimony." 1 John S. Palmore & Robert G. Lawson, *Instructions to Juries in Kentucky,* § 1.06 (3d ed.1975). But, it is the indictment which determines the initial scope of the trial and only a Grand Jury may indict. RCr 6.06. And, "[i]f the same act may constitute either two offenses, or if a single act is common to two offenses, the Grand Jury may elect to indictment on either." *Davidson v. Commonwealth,* 436

---

**3.** Appellant asserts in his brief that the fourth degree assault instruction is required, "[w]hen there is reasonable doubt whether the defendant's culpable mental state was in-

tentional, wanton, or reckless." Yet, the tendered instruction used only an intentional mental state.

S.W.2d 495, 497 (Ky.1968), *see also Young v. Commonwealth,* 968 S.W.2d 670, 672 (Ky.1998), *reversed on other grounds* by *Matthews v. Commonwealth,* 163 S.W.3d 11 (Ky.2005). It is not for the defense to determine the charge, but rather to defend against it.

■ Under the particular facts of each case, uncharged offenses are not necessarily "lesser-included offenses." "The fact that the evidence would support a guilty verdict on [an uncharged, but not lesser-included] offense does not entitle a defendant to an instruction on that offense." *Hudson v. Commonwealth,* 202 S.W.3d 17, 21 (Ky.2006).

■ Even "[a]n instruction on a lesser-included offense is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Mack v. Commonwealth,* 136 S W.3d 434, 436 (Ky.2004) (citations omitted). In other words, "an instruction on a lesser-included offense is required if the evidence would permit the jury to *rationally* find the defendant not guilty of the primary offense, but guilty of the lesser offense." *Thomas v. Commonwealth,* 170 S.W.3d 343, 349 (Ky.2005) (citations omitted)(emphasis added).

The definition of a "lesser-included offense" is drawn from KRS 505.020(2) which states:

A defendant may be convicted of an offense that is included in any offense with which he is formally charged. An offense is so included when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

(b) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein; or

(c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission; or

(d) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest suffices to establish its commission.

In reference to KRS 505.020(2) we noted in *Mack,* 136 S.W.3d at 438:

Section (a) codifies into Kentucky law the test set forth in *Blockburger v. United States* [284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)] for determining if a person may be convicted for more than one offense as a result of a single course of conduct, *i.e.,* the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. In other words, if each *statute* requires proof of an additional fact which the other does not, the offenses are not the same under the *Blockburger* test. Accordingly, in applying the *Blockburger* test, we must focus[ ] on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial. But before applying the *Blockburger* test to a multi-purpose criminal statute, the court must construct from the alternative elements within the statute the particular formulation that applies to the case at hand.

*Id.* (Internal citation and quotations omitted).

Moreover, where a party's position is reflected in the tendered instructions, only those statutory elements set out in the tendered instructions should be considered. RCr 9.54(2).

Appellant claims fourth degree assault was established by proof of the same or less than all of the facts required to establish the commission of complicity to the second degree assault charge, and therefore, under KRS 505.020(2)(a), it was a "lesser-included offense" of the assault complicity charge.

KRS 502.020 (complicity) states, in pertinent part, as follows:

A person is guilty of an offense committed by another person *when, with the intention of promoting or facilitating the commission of the offense he:* (a) Solicits or engages in a conspiracy with another person to commit the offense, or (b) *Aids* or counsels *such person in committing the offense. Id.* (Emphasis added).

Here the amended indictment charged Appellant with complicity to second degree assault under KRS 508.020(b) by intentionally aiding Brown when Brown *"intentionally cause[d]* ... physical injury to another person by means of a ... dangerous instrument ...."* Appellant, however, offered an instruction under KRS 508.030 requiring a finding that *"[Appellant]* intentionally caused physical injury to another person ...."* (Emphasis added).

To find Appellant guilty of the complicity charge, the jury had to find that he intentionally promoted the offense of second degree assault in aiding Brown in committing the offense. To find Appellant guilty of only the preceding fourth degree assault, the jury had to find that Appellant intentionally caused physical injury to Rogers; *all of which was before the occurrence of the complicit actions.* Accordingly, the complicity charge requires proof that *Brown* caused the physical injury (albeit with a dangerous instrument), whereas the fourth degree assault instruction requires an inconsistent finding that *Appellant* caused the physical injury. Each

having inconsistent elements under the facts of this case, Appellant's prior fourth degree assault can not be a "lesser-included charge" of the complicity to assault in the second degree.

"An instruction on a separate, uncharged, but [not lesser-included] crime— in other words, an alternative theory of the crime—is required only when a guilty verdict as to the alternative crime would amount to a defense to the charged crime, *i.e.,* when being guilty of both crimes is mutually exclusive." *Hudson,* 202 S.W.3d at 22, *Cf. Sanborn v. Commonwealth,* 754 S.W.2d 534 (Ky.1988). This was not the case here.

Appellant drove them to the site where they beat Rogers. He encouraged Brown to take Rogers's wallet. While he was beating Rogers, trying to get his wallet, he yelled for Brown to come and help. When Brown brought a lug wrench and started hitting Rogers with it, Appellant continued to threaten Rogers and to encourage Brown to get the wallet. Moreover, Appellant told Rogers that he was going to kill him—and they might have, except for the appearance of the "good samaritan." This was the time of the assault for which he was charged with complicity—not his simple assault which preceded it. Moreover, considering the totality of the evidence, the jury could not reasonably, or rationally, have found that Appellant was not guilty of complicity to this second degree assault, but guilty of only a preceding fourth degree assault.

Appellant's reliance on *Webb v. Commonwealth,* 904 S.W.2d 226 (Ky.1995) is misplaced. In *Webb,* the defendant was being charged with complicity, but requested a facilitation instruction as a "lesser-included offense" based on his lack of intent to commit the crime. *Id.* at 228–29. Here, Appellant did not request a facili-

tation instruction. He requested an assault fourth instruction, a totally separate offense both in elements and time under the facts of this case. Therefore, the instruction was not warranted as it merely reflected an uncharged, but not "lesser-included" offense. Thus, no error occurred.

## VI. There was no prosecutorial misconduct.

During closing argument, the prosecutor, in response to Appellant's evidence and comments questioning Rogers's mental stability and motives for moving to eastern Kentucky, countered: "[Rogers] doesn't have family here to my knowledge. He probably doesn't have a lot of friends. He doesn't have anybody except himself, and now you people, the conscience of the community, to say we don't tolerate this. And we won't tolerate it." Appellant objected and moved for a mistrial, both of which were overruled.

▮ Appellant now asserts this constituted prosecutorial misconduct sufficient to require reversal. *See Stopher v. Commonwealth*, 57 S.W.3d 787, 805 (Ky.2001). While a prosecutor has wide latitude in presenting a case to the jury, he cannot "cajole or coerce a jury to reach a verdict which would meet with the public favor." *Stasel v. Commonwealth*, 278 S.W.2d 727, 729 (Ky.1955). In *Stasel*, the Prosecutor argued "[a]nd I want you to ask yourselves, what do you think the good people in Hart County would think of you if you turned that man loose, with this woman getting up out of her chair and walking over and taking a hold of him and [saying], 'this is the man that committed the crime on me.'" *Id.* at 728. In contrast, the prosecutor here did not try to cajole or coerce the jury to return a verdict of guilty by arguing it would meet with public favor to do so. He simply asked the jury to render a verdict despite Rogers's unfavorable station in life. In so doing, he acknowledged the jury as the "conscience of the community," which they truly are. He did not attempt to threaten them with "public scorn" for doing their job. Prosecutors are entitled to respond appropriately to matters raised by the defense. *Hunt v. Commonwealth*, 466 S.W.2d 957, 959 (Ky.1971). We find no error here.

## VII. Juror dishonesty did not prejudice Appellant.

Appellant's co-defendant, Brown, moved for a new trial on the basis that a certain juror had allegedly been dishonest in voir dire about not knowing him. Brown's motion was overruled. Appellant now argues that his conviction should be overturned because of alleged juror misconduct regarding Brown. However, Appellant did not join in Brown's motion; nor did the juror claim to have known Appellant. This argument is without merit.

## CONCLUSION

After review of the record and the issues presented, this court affirms Appellant's convictions.

All concur.