Phillip Howard McGUIRE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 93–SC–867–MR.

Supreme Court of Kentucky.

Oct. 27, 1994.

Kim Brooks, Covington, for appellant.

Chris Gorman, Atty. Gen., Joseph R. Johnson, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

LEIBSON, Justice.

On March 2, 1993, the appellant broke into a closed drug store in the Park Avenue Shopping Center in Glasgow, Kentucky, and stole controlled substances, Valium, Xanax, and a codeine derivative. In doing so he set off a burglar alarm, and he was still in the store when the police arrived.

The appellant was convicted of: (1) theft by unlawful taking over $300, for which he was sentenced to five years imprisonment enhanced to fifteen years as a persistent felony offender; and (2) third-degree burglary, for which he was sentenced to five years imprisonment enhanced to fifteen years for being a persistent felony offender. Five years of the enhanced burglary sentence were run consecutively with fifteen years on the enhanced theft charge, for a total sentence of twenty years, and the remainder was run concurrently. He appeals to our Court as a matter of right.

The defense was a plea of mental incapacity, based on testimony of previously diagnosed mental illness, a history of drug addiction to Valium, and an overdose of drugs at the time of the incident. His personal physician testified that he had prescribed 100 Valium pills in 5 milligram doses the day before the occurrence. The appellant and his witnesses testified that on the evening before the break-in the appellant had consumed some 60 of these Valium pills, together with numerous cans of beer. The appellant testified he had no memory of events from the evening before the break-in until the day after when he came to his senses while being advised that his lawyer was on the way in to see him. He had had a conversation with a police officer the previous evening after his arrest, but testified he had no memory of such conversation. He believes that he was so significantly impaired by drugs and alcohol that his actions were "unconscious," inferring he did not qualify as possessing a "culpable mental state" as defined in KRS 501.010.

The jury instructions included one on insanity, one on guilty but mentally ill, and one on intoxication as a defense. The defense objected to the instruction on intoxication, offering in lieu thereof an instruction styled "Temporary Mental Incapacity" which the trial court refused. By its verdicts the jury rejected the insanity and intoxication defenses. The findings of guilty on both the burglary and theft charges specified the defendant was "guilty ... but mentally ill."

The appellant claims four errors: (1) the pretrial psychiatric examination ordered by the court, performed by a clinical psychologist, was inadequate; (2) failure to instruct on "temporary mental incapacity"; (3) permitting the Commonwealth to use evidence of prior felony convictions without first proving "by clear and convincing evidence [the pleas of guilty] to be knowing and voluntary"; and (4) the number and nature of prior felony convictions used at the PFO stage were fundamentally unfair.

## I. PSYCHIATRIC EXAMINATION

The appellant had an extensive background as a drug user and abuser. Promptly after arraignment the defense filed a notice the appellant would rely on mental condition as a defense, and the Commonwealth re-

sponded with a motion requesting the court to require that the defendant "be examined by the Kentucky Corrections Psychiatric Center [KCPC] by and through its properly qualified staff and give their medical/psychiatric opinion" with respect to both competency to stand trial and mental condition at the time of the offense (i.e., whether he then "lack[ed] substantial capacity to either appreciate the criminality of his conduct or conform his conduct to the requirements of law").

The court so ordered, and in due course the appellant was examined at KCPC by a licensed clinical psychologist, Dr. J. Robert Noonan, Ph.D., but not a psychiatrist. Dr. Noonan reported, and later testified at a pretrial hearing on these issues, that the defendant was both competent to stand trial and that, at the time of the offenses, he was not insane. The controlling statutes on appointing an expert to investigate whether "the defendant is incompetent to stand trial" (KRS 504.100) and on appointing an expert if the defendant files notice he intends to introduce evidence of mental illness or insanity at the time of the offense (KRS 504.070), both specify "the court shall appoint *at least one (1) psychologist or psychiatrist* to examine, treat and report." Emphasis added.

At the conclusion of the June 30, 1993 hearing at which Dr. Noonan from KCPC testified, the defense filed a handwritten document styled "Motion for 'Proper and Total' Psychiatric Examination," and McGuire personally argued the motion. After deliberating, the trial judge overruled it, being of the opinion that Dr. Noonan's examination adequately complied with the statutory mandates for court ordered assistance in providing experts on the insanity issue. KRS 504.060(9) defines "psychologist" as "a person licensed at the doctoral level pursuant to KRS Chapter 319 who has been designated by the Kentucky Board of Examiners of Psychology as competent to perform examinations." Dr. Noonan is a qualified psychologist, so KRS 504.070 and 504.100, both of which permit use of either a "psychologist or psychiatrist to examine," were complied with.

The principal thrust of appellant's motion for a "proper and total" psychiatric examina-

tion appears directed at appellant's belief that Dr. Noonan's examination was so inadequate that the judge should have excluded the opinions he expressed. The motion does not specify the appellant was seeking public assistance as an indigent to obtain an expert to provide trial testimony, as provided for in KRS Chapter 31. It is not clear the defense needed or wanted such assistance for trial purposes, because the defense had two other expert witnesses through whom it presented its mental illness defenses. At the preliminary hearing the trial court's conclusion was limited to finding the appellant competent to stand trial and not insane, findings made for the purpose of ordering the case to proceed to trial. The court stated the ruling in this respect was *not* with reference to presenting a defense at trial based on mental illness, including evidence addressing the issue of "legal insanity" and any issues involving the appellant's mental status: that its ruling "in no way precludes" these issues being brought up as "issues of fact for the jury" at the trial.

Clearly Dr. Noonan's qualifications met the statutory requirements for testifying at the preliminary hearing. Whether Dr. Noonan was not credible when later testifying at trial in rebuttal, because of either inadequate examination (as alleged) or because he was not a psychiatrist, is another question. His credibility at trial is not pertinent to the present inquiry. The "Motion for 'Proper and Total' Psychiatric Examination," specified:

"Defendant does not argue that the above tests were not sufficient for a determination of his present functions and mental capabilities.

He does argue however, that his defense is temporary insanity reflecting from a number of disorders which cannot be determined visually but can only be determined through a total examination which consists of several highly skilled people, and the use of sophisticated medical equipment."

If the appellant was seeking assistance as an indigent to employ a court appointed expert to assist in an insanity defense, he was required to pursue the matter under KRS Chapter 31. Perhaps the defense changed

its mind about the need for further court appointed examination because the appellant had other evidence available from which to fashion such a defense. Such other evidence consisted of the testimony of the appellant's personal physician, an internist who happened to be long on experience (if not special training) in psychiatry. This doctor had been treating appellant for stomach problems and for anxiety and depression, and had prescribed both Xanax and Valium in the past. This doctor testified that he had prescribed the pills the appellant testified to ingesting, and, if the appellant took 60 five (5) milligram Valium tablets as he testified, such would have a "tremendous effect" on him: the doctor would be surprised if the appellant was "still on his feet," the appellant would be in such a "drunken" state that he probably would "not know what he was doing." Further, the appellant presented at trial the testimony of Dr. Madeline Chambers, a clinical psychologist associated with the Department of Probation and Parole, who in the past had screened the appellant for drug problems. She testified that the appellant had some evidence of mental illness, including signs of paranoia or schizophrenia, albeit her final diagnosis was of an unspecified mental disorder which is nonpsychotic. Although neither of the appellant's witnesses ventured an opinion that the appellant met the standard for legal insanity at the time of the offense, they presented sufficient evidence to justify an instruction on insanity as a defense when such evidence was considered in combination with the lay evidence presented by the appellant regarding his condition at the time of the offense. The court so instructed.

The "Motion for 'Proper and Total' Psychiatric Examination" was properly overruled if its purpose was to require more or different testimony for the pretrial hearing, and it was inadequate as a request for expert assistance pursuant to KRS 31.185. *See McCracken County Fiscal Court v. Graves, Judge and Department for Public Advocacy v. Shadoan,* Ky., 885 S.W.2d 307 (to be rendered October 27, 1994) for the need of indigent defendants to move for "advanced authorization" before employing experts for trial.

## II. FAILURE TO INSTRUCT ON TEMPORARY MENTAL INCAPACITY

As previously stated, in addition to instructing on legal insanity as a defense, the trial court instructed on intoxication as a defense. This instruction was labeled "Voluntary Intoxication," but the instruction defined for the jury both "intoxication" and "voluntary intoxication" (KRS 501.010(2) and (4)), and the instruction as given made no distinction between the two. It stated:

"If you find the Defendant guilty of one or both of the offenses mentioned in these Instructions, and do not believe he was temporarily insane at the time he committed such offense or offenses, but you further believe from the evidence that at the time he committed the offense or offenses he was so intoxicated that he did not form the intention to commit the offense or offenses, you shall find him not guilty by reason of intoxication."

■ Burglary and theft are both crimes requiring specific intent as an element of the offense. As stated in 1 Cooper, *Kentucky Instructions to Juries* (Criminal), Sec. 11.30, Comment:

"Intoxication, either voluntary or involuntary, is a defense if it negates the existence of an element of the offense. KRS 501.080(1). However, voluntary intoxication is not a defense to an offense having 'wantonness' as its essential element of culpability. See the 1974 Commentary to 501.080(1) and the definition of 'wantonly' at KRS 501.020(3)."

■ Intoxication, whether voluntary or involuntary, is a defense to an intentional crime if the effect of the intoxication is to completely negate the element of intent; it causes the defendant's mental state to equate with insanity. Voluntary intoxication does not negate culpability for a crime requiring a culpable mental state of wantonness or recklessness, but it does negate specific intent.

Dictum found in *Moore v. Commonwealth,* Ky., 771 S.W.2d 34 (1988), a murder case, suggests that, even in cases where there is evidence to support giving a voluntary intoxication instruction, the court need not instruct

on other offenses involving a wanton or reckless mental state. As pointed out in 1 Cooper, *Kentucky Instructions to Juries,* Sec. 11.30, Comment, for reasons just stated, this is not correct where the evidence presents lesser included or other offenses involving wantonness or recklessness as a culpable mental state, because voluntary intoxication is not then a defense. The primary basis for affirming failure to instruct on other offenses in *Moore* was lack of evidence to support an instruction on intoxication in the first place: "the giving of such an instruction was more than what Moore was entitled." 771 S.W.2d at 36. To the extent that *Moore* suggests that instructions on offenses involving alternative mental states need not be given in cases where there is proof to support giving a voluntary intoxication instruction, it is in error and should be disregarded. But this does not bolster the appellant's argument for an instruction on "temporary mental incapacity" rather than intoxication in the present case. Here the crimes implicated required specific intent. Other offenses with alternative mental states are not involved.

The trial court perceived correctly that intoxication was a defense, whether voluntary or not. In either event, if the appellant was so intoxicated he "did not form the intention to commit the offense or offenses," the jury was instructed to find the defendant "not guilty by reason of intoxication." (*Instruction* as quoted *supra*). The fact that the instruction was labeled "Voluntary Intoxication" and voluntary intoxication was defined along with "intoxication," if anything, would have benefitted the appellant by assisting the jury in finding for the appellant under this instruction if the jury were so inclined.

In the present case the defense objected to an intoxication instruction, not as unwarranted by its evidence, but because it preferred in lieu thereof a tendered instruction on "Temporary Mental Incapacity." The instruction the defense tendered, and the court refused, was as follows:

"Even though you believe from the evidence that the Defendant, Phillip Howard McGuire, entered Ely Drugs and took prescription drugs without the permission of Ely Drugs, if you further believe from the evidence that at the time he did so, the Defendant was, as a result of ingested drugs, alcohol, or mental illness, unconscious of his act, or his mind was thereby so impaired and unsound that he did not have sufficient reason to know what he was doing, or to appreciate the criminality of his conduct, you shall find him not guilty."

The instruction given by the court (see Instruction No. 5, Voluntary Intoxication, quoted *supra*) exculpated the defendant if the jury believed he was "temporarily insane at the time" or "so intoxicated that he did not form the intention to commit the offense or offenses." The tendered instruction on temporary mental incapacity added nothing except language further exculpating the defendant if "unconscious of his act." The appellant cites the Court of Appeals' decision in *Wyatt v. Commonwealth,* Ky.App., 738 S.W.2d 832 (1987) as support for the right to such an instruction.

As stated in 1 Cooper, *Kentucky Instructions to Juries* (Criminal), Sec. 11.33, Comment:

"This defense ['temporary mental incapacity'] is not found in the penal code, but was resurrected from the common law in *Wyatt v. Commonwealth,* Ky.App., 738 S.W.2d 832 (1987).... [T]he defense is really a claim of temporary insanity...."

In this case the trial court's instruction on the defense of insanity exculpated the defendant if the jury believed "that at the time he committed the offense or offenses he was temporarily insane." The jury was instructed to find him insane "if as a result of mental illness, mental retardation, or *other mental condition,* he lack[ed] the substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Emphasis added. Further, the jury was instructed on intoxication as a defense. Between these two prongs the instructions provided ample framework to acquit the appellant if the jury believed the defendant lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law by reason of preexisting

mental illness, intoxication, or a combination of the two.

*Wyatt v. Commonwealth* is in error in specifying a need for a separate instruction outlining temporary mental incapacity as a defense. The first section of the Kentucky Penal Code enacted in 1974 specifies:

"Common law offenses are abolished and no act or omission shall constitute a criminal offense unless designated a crime or violation under this code or another statute of this state." KRS 500.020(1).

All substantive law related to criminal responsibility, including general principles of liability, accountability, justification, and responsibility (covered in KRS Chapters 501–504) is now statutory, and instructions should be stated within the context of the statutory framework. *Wyatt* concluded a separate instruction on temporary mental incapacity was necessary by relying on pre-code cases involving common law crimes, cases equating circumstances establishing that the defendant was at the time "unconscious of his acts" with temporary insanity. The appellant was entitled to argue his mental state was so impaired he was "unconscious of his acts" within the framework of the insanity and intoxication instructions.

To instruct separately on temporary mental incapacity goes beyond framing the issues in statutory terms, as is appropriate, to commenting on the evidence. The problem with evidentiary instructions is that they overemphasize an aspect of the evidence. Kentucky follows the "bare-bones" principle in providing instructions. *Rogers v. Kasdan,* Ky., 612 S.W.2d 133 (1981). In criminal cases as in civil cases,

"... we caution against instructions getting into evidentiary matters, subquestions which better practice suggests should be omitted from the instructions and left to the lawyers to flesh out in closing arguments." *Ford Motor Co. v. Fulkerson,* Ky., 812 S.W.2d 119, 123 (1991).

The trial court properly refused to instruct on temporary mental incapacity. The instructions as given were adequate for the appellant to argue his theory of the case.

## III. COLLATERAL ATTACK ON PRIOR FELONY CONVICTIONS

■ The appellant objected to the use of prior felony convictions obtained pursuant to guilty pleas. These felony convictions were proved by having the clerk read from the judgment of conviction, advise whether the judgment was signed by the judge, and specify whether the appellant was represented by counsel. The appellant's brief states objection was made "to the use of the priors on the basis that they were not made knowingly and voluntarily." In chambers the appellant testified the basis of this objection was that he was not apprised by his counsel of the potential consequences of these pleas in that they could be later used to prove persistent felony offender (PFO) status. If true, failure to give such advice about *future* consequences fails to qualify as a constitutional defect.

But if we assume the appellant testified to the effect his constitutional rights were not adequately explained to him, as guaranteed in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), this in itself would not have justified suppressing proof of prior convictions at the PFO stage of the present proceedings. KRS 532.080, the PFO enhancement statute, contemplates enhancement by the *fact* of prior convictions. Previously we have held the Commonwealth is not required to affirmatively prove constitutional requirements were met in obtaining prior convictions before proof of the judgment of conviction is admissible. *See Dunn v. Commonwealth,* Ky., 703 S.W.2d 874 (1986) and *Commonwealth v. Gadd,* Ky., 665 S.W.2d 915 (1984). The federal appellate court decided that our Kentucky procedure was constitutionally inadequate in *Dunn v. Simmons,* 877 F.2d 1275 (6th Cir.Ky.1989), but it has since been approved by the U.S. Supreme Court in *Parke v. Raley,* 506 U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). As stated in *Parke v. Raley:*

"The persistent felony offender statute [of Kentucky] requires that the prosecution prove only the *fact* of a previous conviction beyond a reasonable doubt; the Commonwealth need not also show that the convic-

tion was validly obtained." 506 U.S. at —, 113 S.Ct. at 520, 121 L.Ed.2d at 400. "On collateral review [preliminary to admitting proof of the judgment of conviction in a PFO proceeding], we think it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to governmental misconduct) that the defendant was not advised of his rights. In this situation *Boykin* does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained." 506 U.S. at —, 113 S.Ct. at 523, 121 L.Ed.2d at 404.

*Parke v. Raley* reserves the further issue, whether "due process does not require state courts to permit challenges to guilty pleas used for enhancement purposes *at all.*" 506 U.S. at —, 113 S.Ct. at 522, 121 L.Ed.2d at 403. Emphasis added. However, more recently, in *Custis v. United States,* 511 U.S. —, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), the U.S. Supreme Court proceeds to address this further issue, and goes beyond *Parke v. Raley* to the extent of denying the right to challenge use of prior convictions to enhance punishment where enhancement is premised on "only the *fact* of previous conviction." *Parke v. Raley,* quoted *supra.* *Custis* involves a federal statute relating to the penalty for possession of a firearm by a felon. The court states:

> "The statute focuses on the *fact* of the conviction and nothing suggests that the prior final conviction may be subject to collateral attack for potential constitutional errors before it may be counted." 511 U.S. at —, 114 S.Ct. at 1736, 128 L.Ed.2d at 525.

*Custis* attacked his previous convictions claiming ineffective assistance of counsel when he pled guilty, just as McGuire does here. The court affirmed the reasoning of the lower court "that the Constitution bars the use of a prior conviction for sentence enhancement only when there was a com-

plete denial of counsel in the prior proceeding." 511 U.S. at —, 114 S.Ct. at 1735, 128 L.Ed.2d at 524.

The court states the federal statute

> "...lacks any indication Congress intended to permit collateral attacks on prior convictions used for sentence enhancement purposes." 511 U.S. at —, 114 S.Ct. at 1736, 128 L.Ed.2d at 526.

The PFO enhancement statute is similarly lacking in "any indication" the General Assembly "intended to permit collateral attacks on prior convictions used for sentence enhancement purposes."

The U.S. Supreme Court decision in *Custis* applies to proof of PFO status in the present case. KRS 532.080(2) and (3) require proof of the *fact* of "previous felony convictions" and not their underlying validity.[1]

Following *Custis,* Kentucky trial courts are no longer required to conduct a preliminary hearing into the constitutional underpinnings of a judgment of conviction offered to prove PFO status unless the defendant claims "a complete denial of counsel in the prior proceeding." *Custis,* as quoted *supra.*

The trial court properly overruled the appellant's claim the prior convictions should have been excluded as not obtained knowingly and voluntarily.

## IV. MULTIPLICITY OF PRIOR FELONY CONVICTIONS

 The Commonwealth introduced evidence of seventeen prior felony convictions. Four were convictions within five years of the date of the present offenses. Thirteen of these convictions involved offenses wherein the sentence imposed was served out more than five years before commission of the felonies for which he now stands convicted, and eleven of these thirteen were sentences imposed August 29, 1984 for forgery offenses committed at or near the same time and more than ten years before the present conviction.

---

1. As the U.S. Supreme Court duly notes in *Custis,* if the previous conviction thus used for enhancement purpose is later set aside by collateral attack, in RCr 11.42 proceedings, or federal ha-

beas corpus proceedings, or otherwise, the defendant "may then apply for reopening of any ... sentence [thus] enhanced." 511 U.S. at —, 114 S.Ct. at 1739, 128 L.Ed.2d at 529.

The PFO statute, KRS 532.080(3)(c), includes convictions for which the offender completed service of the sentence imposed before the five year time line so long as "any of the previous convictions [was] within five years prior to the date of the commission of the felony for which [the defendant] now stands convicted." Under the so-called "Truth–In–Sentencing" statute, KRS 532.055, the jury is permitted to hear the nature of all prior offenses for which a defendant has been convicted. Nevertheless, the appellant contends the trial court erred by permitting overuse of such evidence. He cites the Kentucky Rules of Evidence, KRE 403, specifying that

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay or needless presentation of cumulative evidence."

The appellant claims the Commonwealth was needlessly and improperly allowed to introduce evidence of convictions for thirteen stale offenses, eleven involving forgeries occurring as part of a single series of transactions, and this evidence ignores the purpose of KRE 403.

Further, appellant asserts we should consider the policy in KRE 609, the rule permitting impeachment by evidence of conviction of a crime, limiting the use of prior convictions beyond ten years "unless the court determines that the probative value of the conviction substantially outweighs its prejudicial effect." The appellant asserts we should apply this policy to the use of prior convictions in the PFO/truth-in-sentencing phase.

Strictly speaking, KRE 609 is unrelated to introducing prior felony convictions in a PFO proceeding. All of the appellant's prior felonies could be used to support a PFO conviction. The question resolves itself into making a rational and judicious decision under KRE 403 as to whether some of this evidence should have been excluded because its "probative value is substantially outweighed by the danger of undue prejudice ... or needless presentation of cumulative evidence."

KRE 403, quoted *supra*. Deciding this question is a judgment call, and as such it must be reviewed on appeal using the clearly erroneous standard. The ten year presumption against admissibility of prior convictions for impeachment purposes does not apply to the use of prior felonies in the penalty phase, albeit remoteness compounded by unnecessary multiplicity is a factor under KRE 403 for the trial court to consider. In present circumstances such consideration does not compel an opposite result. The trial judge's decision to admit the evidence in its entirety was not clearly erroneous.

For the reasons stated, the judgment of the trial court is affirmed.

LAMBERT, LEIBSON, SPAIN and REYNOLDS, JJ., concur.

STEPHENS, C.J., and STUMBO and WINTERSHEIMER, JJ., concur in results only.