Anthony WEBB, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 94–SC–443–MR.

Supreme Court of Kentucky.

June 8, 1995.

As Modified on Denial of Rehearing
Aug. 24, 1995.

Susan J. Balliet, Prospect, for appellant.

Chris Gorman, Atty. Gen., Amy F. Howard, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

SPAIN[1], Justice.

Appellant, Anthony Webb, was convicted by a jury of Complicity to Trafficking in a Controlled Substance in the First Degree and of being a Persistent Felony Offender in the Second Degree. His ten-year sentence was enhanced to twenty years. Webb now appeals as a matter of right.

The testimony heard by the jury presented two significantly different versions of events. The appellant testified on his own behalf. According to the appellant's theory of the case, his girlfriend, Melodie Phelps, had been

---

1. This opinion was originally prepared by Justice Spain prior to his retirement. Upon rehearing, the opinion was modified upon the Court's own motion with Justice Fuqua sitting.

introduced to Detective Steve Roberts by Gary Thompson, a confidential police informant. On November 15, 1993, Detective Roberts was working undercover in Bowling Green, Kentucky, where he was attempting to purchase drugs. Phelps and Thompson arrived at appellant's home in Thompson's car that evening. Phelps mentioned that she had to do an unspecified favor for Thompson. Apparently jealous that his girlfriend was riding around with Thompson, appellant told Phelps that he would take her in his own car to do the favor.

Phelps told appellant to take her to a parking lot in Bowling Green. Upon arrival, Thompson walked over to Detective Roberts, who was sitting in a pickup truck, and spoke with him. When Thompson returned, he handed Phelps some money, which appellant later discovered to be $150.00. Appellant then drove Phelps to an apartment complex. Phelps went inside while appellant remained in his car. When she came out, appellant asked her what she was doing; she responded that Thompson had offered to buy her a pill if she would get Thompson some pills as well. Phelps allegedly had bought four Demerol pills and two Dilaudid pills.

Though appellant knew about the pills, he drove Phelps back to the parking lot where Roberts was waiting. Appellant testified that Phelps got out, gave Roberts one Dilaudid pill, gave Thompson the four Demerol pills, and kept one Dilaudid pill for herself. Appellant asserts that he never got out of the car, never got any of the money, and never got any of the pills.

The Commonwealth presents a different version. According to Detective Roberts, he gave Phelps $50.00 so that she could purchase a Dilaudid pill for him. After she took the money, appellant drove up and they told Roberts to wait there. When Phelps and the appellant returned, Phelps got out of the car and walked away. Appellant got out of the car and motioned the detective to follow him. Roberts testified that he and the appellant entered an apartment, at which point appellant handed the detective a Dilaudid pill.

The jury was instructed on First–Degree Trafficking in a Controlled Substance, First–Degree Trafficking in a Controlled Substance by Complicity, and First–Degree Possession of a Controlled Substance. The appellant requested an instruction on criminal facilitation, under KRS 506.080, but the trial court denied this request. The jury returned a verdict on the complicity charge with a sentence of ten years.

During the sentencing phase, the jury learned of appellant's two prior convictions for theft as part of the proof for the PFO charge. Appellant filed a written motion to suppress the 1985 conviction for theft by unlawful taking. He also orally moved to suppress his 1991 conviction for second-degree burglary and theft by unlawful taking. The basis of these challenges was *Boykin v. Alabama, see infra.* After a hearing on this issue, the trial court overruled appellant's motion to suppress these prior convictions. The jury convicted him of PFO II. Appellant received a total sentence of twenty years.

■ Appellant contends that the court's refusal to provide a jury instruction on criminal facilitation was reversible error. It was a lesser-included offense for which a jury could have found him guilty. "Our law requires the court to give instructions 'applicable to every state of [the] case covered by the indictment and deducible from or supported to any extent by the testimony.'" *Reed v. Commonwealth*, Ky., 738 S.W.2d 818, 822 (1987) (citing *Lee v. Commonwealth*, Ky., 329 S.W.2d 57, 60 (1959)).

KRS 506.080 provides that a person is guilty of criminal facilitation if he acts with knowledge that another person is committing a crime, and "he engages in conduct which knowingly provides such person with means or opportunity for the commission of that crime and which in fact aids such person to commit the crime." The main difference between this offense and complicity is the state of mind; complicity requires the complicitor to "intend" that the crime take place.

■ A complicity instruction was appropriate, where the evidence presented by the Commonwealth suggested that appellant intended that the pills be sold to Detective Roberts. However, the appellant's testimony alternatively provides ample evidence to sug-

gest that, though he became aware of Phelps' criminal activity and provided her with transportation, he did not actually intend that the criminal transaction occur. His version of the incident, provided to the jury, presented evidence that he did not know about Phelps' criminal activity until after she had purchased the drugs. He then drove her back to the apartment. He testified that he did not accompany Phelps when she agreed to get the drugs for Roberts, nor when she purchased the drugs, nor did he deliver the Dilaudid pill to Roberts. Appellant claims he never helped plan the transaction nor received any money or other benefit from it.

■ In light of this evidence, a reasonable juror could believe that appellant gave Phelps a ride in his car, knowing that she was in the process of a drug transaction, but that appellant did not specifically intend that that crime be accomplished. An instruction on a lesser-included offense should be given if the evidence is such that a reasonable juror could doubt that the defendant is guilty of the crime charged, but conclude that he is guilty of the lesser-included offense. *Luttrell v. Commonwealth*, Ky., 554 S.W.2d 75, 78 (1977).

■ The decision as to whose story to believe is, of course, an issue for the jury to decide. The jury should have been given an opportunity to consider this criminal facilitation instruction. Refusal to allow such an instruction, when supported by the evidence presented, constitutes reversible error.

Appellant also argues that the trial court erred when it denied appellant's motion to suppress the prior 1985 and 1991 convictions for the PFO charge. Appellant claims these convictions were invalid under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). He was not specifically informed by either court at the time of his guilty plea concerning his Sixth Amendment right to confront his accusers.

■ In *McGuire v. Commonwealth*, Ky., 885 S.W.2d 931 (1994), relying on *Custis v. United States*, 511 U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), this Court held that "[t]he PFO enhancement statute is similarly lacking in 'any indication' the General As-

sembly 'intended to permit collateral attacks on prior convictions used for sentence enhancement purposes.'" *Id.* at 937. This Court further stated that "[t]he U.S. Supreme Court decision in *Custis* applies to proof of PFO status in the present case. KRS 532.080(2) and (3) require proof of the *fact* of 'previous felony convictions' and not their underlying validity." *McGuire*, 885 S.W.2d at 937.

■ The Court continued by stating that "Kentucky trial courts are no longer required to conduct a preliminary hearing into the constitutional underpinnings of a judgment of conviction offered to prove PFO status unless the defendant claims 'a complete denial of counsel in the prior proceeding.'" *Id.* (quoting *Custis*, 511 U.S. ——, 114 S.Ct. 1732).

■ The appropriate remedy to challenge the 1985 and 1991 guilty pleas is through a CR 11.42 proceeding and then the Respondent "'may ... apply for reopening of any ... sentence [thus] enhanced.'" *McGuire*, 885 S.W.2d at 937 n. 1 (quoting *Custis*, 511 U.S. at ——, 114 S.Ct. at 1739).

As a result, we affirm the result, not the reasoning, of the trial court on this issue.

Appellant next alleges that the trial judge should have recused himself. At the time of his trial, there were charges pending against the appellant stemming from the burglary of the home of the father of another Warren Circuit Court judge. Appellant believed that the judge's professional relationship with the son of the burglary victim would diminish the trial judge's impartiality.

■ A trial judge should disqualify himself in any proceeding where he has knowledge of any circumstances in which his impartiality might reasonably be questioned. KRS 26A.015(2)(e).

While stating his reasons for refusing to recuse himself, the trial judge said he had no knowledge about the burglary and had not, at the time, formed an opinion as to the appellant's guilt. He would presume the appellant innocent and instruct the jury to do the same. Additionally, the present action was a drug case and had no relevance to the burglary charges. No facts were presented

to create an appearance of bias. A party's mere belief that the judge will not afford a fair and impartial trial is not sufficient grounds to require recusal. *Howerton v. Price,* Ky., 449 S.W.2d 746, 748 (1970). The trial judge's refusal to recuse himself was not error.

Appellant's final contention of error, that the PFO II–enhanced twenty year-sentence was disproportionate to his crime, was not properly preserved for review. This Court, therefore, will not address that issue.

For the reasons stated in this opinion, this case is hereby reversed and remanded to the Warren Circuit Court.

All concur.