**S.D.O., A Child Under Eighteen, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2006–CA–001647–DG.**

Court of Appeals of Kentucky.

May 2, 2008.

Timothy G. Arnold, Assistant Public Advocate, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Bryan D. Morrow, Assistant Attorney General, Frankfort, KY, for appellee.

Before KELLER, THOMPSON, and WINE, Judges.

*OPINION*

WINE, Judge.

In May of 2005, S.D.O., a juvenile, was charged in the Adair District Court, Juvenile Division, with terroristic threatening in the second degree. S.D.O. denied the charges and proceeded to an adjudication hearing. On November 30, 2005, after hearing the evidence, the district court found S.D.O. guilty of terroristic threatening in the second degree. As a disposition to this finding of guilt, the district court ordered that S.D.O. be committed to the Department of Juvenile Justice. On February 3, 2006, S.D.O. appealed to the Adair Circuit Court arguing: (1) that the evidence was insufficient to prove second-degree terroristic threatening; (2) the juvenile court erred in admitting a note into evidence; and (3) the juvenile court erred in allowing a police officer and the school

principal to testify as to oral admissions of S.D.O. that had not been disclosed in discovery. The circuit court affirmed the conviction, and this Court accepted discretionary review. Finding no error, we affirm.

On May 10, 2005, a teacher at Adair Middle School came in possession of a note believed to be written by S.D.O., a student at the school. The teacher gave the note to the principal of the school, Donald McKinney ("McKinney"), who called the school resource officer, Deputy Alan King ("Deputy King"). Both McKinney and Deputy King questioned S.D.O. about the note in McKinney's office. According to King, S.D.O. admitted to writing the note, including the names on the portion entitled "hit list." McKinney contends that S.D.O. even helped him identify one of the names on the list indicating that he did not spell very well and McKinney was pronouncing it incorrectly. The note was written with a pencil and read as follows:

> Stacy,
>
> Waz↑ Me not much. OK Look you know I Like you. I'm sorry for the othere day. I giveing you my hit List you can add name's to it if you need to and I will get thim to Just give me The name's. This is The List
>
> You can add more names if you need to.
>
> Zac.J
>
> Jasun.M
>
> Sharin.P.
>
> Wal–Mart
>
> Grant
>
> T.J.
>
> Shontay.B.
>
> Mrs. Jyoung
>
> Mr. Jyoung
>
> Justin.D.
>
> Auston.G.

> Shaen.T.

The back of the note stated,

> "To: Stacy
>
> frome: Dewayne
>
> for your eyes only."

Deputy King filed a juvenile complaint/petition charging S.D.O. with terroristic threatening in the second degree, a class D felony pursuant to KRS 508.078. The petition alleges that S.D.O. passed a note to another student at Adair Middle School. The names in this note included those of students, faculty members, a local business, and a court employee. As indicated, the note also refers to the list of names as a "hit list" and asks another child to add names if they wished to and he would get them too.

Prior to trial, S.D.O. moved to suppress the note because the person to whom the note was written, S.M., was not present to testify. S.D.O. further moved to dismiss the action arguing he could not be found guilty of terroristic threatening in the second degree because the alleged conduct occurred during a regular school day, not at a school function. Trial counsel argued that, although not defined within the statute, "*function*" as defined in the dictionary would include formal activities or gatherings outside of the regular school day.

The trial court concluded that a regular school day constitutes a school function for purposes of the statute, and further found that the Commonwealth had laid a proper foundation for admitting the note into evidence at trial. We agree. It would be absurd to hold that a threatening note toward fellow students and teachers during a regular school day is not a threat happening at a school function. Contrary to counsel's arguments before this Court, the primary basis for dismissing the charge was the appellant's tortured definition of "function." During oral arguments,

S.D.O.'s counsel emphasized that portion of KRS 508.078 dealing with "threat ... related to their employment by a school, or work or attendance at school...." S.D.O. points out that youths his age get most of their social interaction in school and, based on the trial court's interpretation of the statute, virtually all threats made by a juvenile would constitute felony offenses. We disagree. First, this was not the basis of the argument made to the trial judge. Secondly, based on the severity of these facts, we cannot say that the trial court was incorrect when it concluded that the Commonwealth met its burden of proving the elements of terroristic threatening. The names on the list in the note were fellow students as well as teachers. Obviously, any threat against such individuals could most easily be perpetrated within the school setting and during the regular school day. Including non-students or entities other than a school does not reduce the potential disruptive effects as to the school.

■■ Likewise, we agree that the Commonwealth laid a proper foundation to admit the note into evidence. KRE 901 reads, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Circumstantial evidence may be used to connect a writing to its alleged author. KRE 901(b)(4). *See Soto v. Commonwealth,* 139 S.W.3d 827, 864–65 (Ky. 2004). At trial, the Commonwealth called Deputy King who, over the defense's objection, read the note into evidence. The trial court ruled that the note was properly authenticated by Deputy King, who testified that the note was the same note he showed S.D.O. in the principal's office. Further, it was the same note S.D.O. admitted to writing in its entirety. In addi-

tion, the Commonwealth called McKinney who also testified that S.D.O. admitted to him that he was the author of the note in question. This testimony was sufficient to authenticate the note. Finally, the trial judge carefully examined the actual note in question, looking for apparent erasures or other physical changes. Finding none, the court allowed the note to be introduced into evidence. We find no error with the trial court's ruling on this issue.

■ S.D.O. next argues that the trial court erred in denying his motion for a directed verdict because the Commonwealth failed to establish the elements of second-degree terroristic threatening beyond a reasonable doubt. S.D.O. claims a directed verdict was appropriate because S.M., the student in whose possession the note was found, did not testify. Further, no one saw S.D.O. write the note or give the note to S.M. Finally, S.D.O. contends that the note itself was too vague, lacking specific acts that mentioned causing death or serious physical injury.

With respect to S.D.O.'s motion for directed verdict, we find no error. When ruling on a motion for a directed verdict of acquittal, the trial court is required to consider all evidence presented in the light most favorable to the Commonwealth. *Commonwealth v. Benham,* 816 S.W.2d 186 (Ky.1991). On appeal, the standard of review is whether or not it was clearly unreasonable for the fact finder to find guilt. *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky.1983).

(1) A person is guilty of terroristic threatening in the second degree when, ... he or she intentionally:

(a) With respect to a school function, threatens to commit any act likely to result in death or serious physical injury to any student group, teacher, volunteer worker, or employee of a public or private elementary or secondary school, vocational school, or institution of postsec-

ondary education, or to any other person reasonably expected to lawfully be on school property or at a school-sanctioned activity, if the threat is related to their employment by a school, or work or attendance at school, or a school function. . . .

KRS 508.078.

The Commonwealth called two witnesses who testified that it was their understanding that S.D.O. was going to blow up Wal–Mart and kill the people on the hit list. J.M., a fellow student, testified that S.D.O. told her he wrote the note to S.M. because he liked her and that the note contained a hit list. However, J.M. said S.D.O. did not allow her to read the note personally. In addition, Z.J., another student whose name was actually one of the names on the hit list, testified that S.D.O. told him he had a hit list with people he intended to kill. Z.J. also did not read the note.

The defense's case consisted of two witnesses. S.D.O. testified on his own behalf and S.D.O.'s father, S.O., also testified on S.D.O.'s behalf. S.D.O. took the stand and denied writing the portion of the note that was the hit list. S.D.O. contended that the note had been altered. He stated that after writing the note he left it in his locker, which was unlocked because he could not remember the combination. He testified that he did speak with Deputy King but did not remember admitting to writing the note. In addition, S.D.O. stated that he believed that Z.J. and S.M. had altered the note in order to get him in trouble. S.D.O.'s father, S.O., testified that both he and S.D.O. could only read and write at a second grade level. The trial court admitted S.D.O.'s competency evaluation into evidence reflecting that S.D.O. did in fact have significant deficiencies in reading and writing. S.O. reviewed the note and testified that he was familiar with S.D.O.'s handwriting and, while it looked like some of the words on the note ap-peared to be written by S.D.O., some of the portion reading "hit list" was not his son's handwriting. The defense again moved for a directed verdict at the close of its case. It too was denied.

Upon viewing the evidence in the light most favorable to the Commonwealth, a fact finder could have determined that S.D.O. had written the letter. Two witnesses testified that S.D.O. admitted to writing the note in its entirety, and even verified the names on the hit list. Two fellow students testified that S.D.O. told them that he had written the note and that it specifically included a hit list. S.D.O.'s admission and the testimony of the students, along with the fact that the note included a "hit list," which in and of itself constitutes a threat of death or serious physical injury as the term indicates, provided sufficient evidence to establish the elements of the offense charged. Finally, although S.D.O.'s father testified some of the names on the "hit list" did not appear to be in his son's writing, other names appeared to have been written by S.D.O. Thus, S.D.O.'s argument that no actual threat existed is without merit. It is well-settled that the weight of the evidence and credibility of witnesses are functions peculiarly within the trier of fact's determination and will not be disturbed. *Partin v. Commonwealth*, 918 S.W.2d 219 (Ky.1996). Where the defendant and prosecution present different accounts of an incident, the decision as to whose story to believe is an issue for the trier of fact. *Webb v. Commonwealth*, 904 S.W.2d 226 (Ky.1995).

Accordingly, the opinion of the Adair Circuit Court affirming the adjudication by the Adair District Court is affirmed.

ALL CONCUR.